Tuesday          10th
February, 1998.


Lemar Jamie Anderson, s/k/a
 Lamar Jamie Anderson,                                    Appellant,

 against        Record No. 2145-96-1
                Circuit Court Nos. CR95-3728 and CR95-3886

Commonwealth of Virginia,                                Appellee.


Upon a Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Baker, Benton, Coleman,
     Willis, Elder, Bray, Annunziata, Overton and Bumgardner

          James Amery Thurman (Thurman & Thurman, on
          brief), for appellant.

          Michael T. Judge, Assistant Attorney General
          (Richard Cullen, Attorney General; Margaret
          Ann B. Walker, Assistant Attorney General,
          on brief), for appellee.


     A divided panel of this Court affirmed Lemar Jamie

Anderson's convictions of possession of cocaine, possession of a

firearm after having been convicted of a felony, and possession of

marijuana.  Anderson v. Commonwealth, 25 Va. App. 565, 490 S.E.2d 274

(1997).  On Anderson's motion, we stayed the mandate of that decision

and granted a rehearing en banc.  Upon rehearing en banc, the stay of

this Court's September 16, 1997 mandate is lifted, and we affirm the

judgment of the trial court for the reasons set forth in the majority

panel opinion.

          Chief Judge Fitzpatrick and Judges Benton, Coleman and Elder

dissent for the reasons set forth in the panel dissent.  Although

Judge Benton concurs in substantial part with the dissent, he would further hold that the portion of the conviction order, which requires Anderson to "waive his Fourth Amendment right against unreasonable searches and seizures for a period of one year," is void as being violative of the Constitution of the United States.  <u>See</u> U.S. Const. amend. IV (protecting "[t]he right of the people to be secure against . . . unreasonable searches and seizures"); amend. XIV.

It is ordered that the trial court allow counsel for the appellant an additional fee of $200 for services rendered the appellant on the rehearing portion of this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses.  This amount shall be added to the costs due the Commonwealth in the September 16, 1997 mandate.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-2-

                                    Tuesday        14th

            October, 1997.


Lemar Jamie Anderson, s/k/a
 Lamar Jamie Anderson,                              Appellant,

  against       Record No. 2145-96-1
               Circuit Court Nos. CR95-3728 and CR95-3886

Commonwealth of Virginia,                           Appellee.


                Upon a Petition for Rehearing En Banc

                      Before the Full Court


        On September 24, 1997 came the appellant, by court-appointed
 counsel, and filed a petition praying that the Court set aside the
judgment rendered herein on September 16, 1997, and grant a rehearing
en banc thereof.

        On consideration whereof, the petition for rehearing en banc
is granted, the mandate entered herein on September 16, 1997 is stayed
pending the decision of the Court en banc, and the appeal is
reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule 5A:35.
 It is further ordered that the appellant shall file with the clerk of
this Court ten additional copies of the appendix previously filed in
this case.

                              –3–

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Willis and Senior Judge Hodges
Argued at Norfolk, Virginia


LEMAR JAMIE ANDERSON, S/K/A
 LAMAR JAMIE ANDERSON
                                        OPINION BY
v.        Record No. 2145-96-1    JUDGE JERE M. H. WILLIS, JR.
                                      SEPTEMBER 16, 1997
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                   A. Bonwill Shockley, Judge

        James Amery Thurman (Thurman & Thurman, on
        brief), for appellant.

        Margaret Ann B. Walker, Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.


     On appeal, Lemar Jamie Anderson contends that the trial

court erred in denying his motion to suppress evidence seized

from his person.  He argues that his prior waiver of his Fourth

Amendment right against unreasonable searches and seizures could

not validate an otherwise invalid search.  We disagree and affirm

the judgment of the trial court.

                          I.  FACTS

     On January 9, 1995, pursuant to a written plea agreement,

Anderson pled guilty to feloniously possessing a firearm on

school property.  Under the terms of the plea agreement, Anderson

agreed to waive "his Fourth Amendment right against unreasonable

searches and seizures" for one year.  Following a colloquy in

which Anderson acknowledged that he understood the agreement, the sentencing judge found that Anderson's plea was entered freely and voluntarily. Prior to the trial court's acceptance of the plea agreement, the prosecutor stated:

> [W]e've given him every incentive in the world to remain of good behavior. He will know as he's out and about that he can be stopped at any time and be checked to make sure he is not carrying drugs or weapons or anything else.

At the sentencing hearing, the Commonwealth introduced certified copies of Anderson's two prior misdemeanor convictions for possession of marijuana with intent to distribute. The stated purpose for offering Anderson's prior record was to demonstrate his history of recidivism and drug use and to explain the inclusion of the waiver provision.

In accordance with the plea agreement, the January, 1995 sentencing order provided, in pertinent part:

> [4] That the defendant shall waive his Fourth Amendment right against unreasonable searches and seizures for a term of one year from the date of sentencing, to-wit: he shall submit his person, place of residence and property to searches and seizures at any time of the day or night by any law enforcement officer with or without a warrant.

On June 21, 1995, two City of Virginia Beach police officers working as private security guards saw Anderson and two other individuals alight from a van, "being very loud in public." The officers approached the men and seized from Anderson: 0.07 grams of cocaine, which he dropped on the ground; a .357 magnum firearm

in his backpack; and 0.18 ounces of marijuana in a baggie in his backpack.  The circumstances did not support a warrantless search of Anderson's person.

Anderson was indicted for possession of cocaine, possession of a firearm after having been convicted of a felony, possession of a controlled substance while in possession of a firearm, and possession of marijuana.  He moved pre-trial to suppress the evidence seized from his person, arguing that his prior waiver of his Fourth Amendment rights was invalid.  The trial court ruled that the waiver was valid and denied the motion to suppress.

## II.  OTHER JURISDICTIONS

Anderson contends that his waiver of his Fourth Amendment rights as a condition of the January, 1995 plea agreement did not validate the search of his person.  This issue is one of first impression in Virginia.  However, other jurisdictions have addressed similar questions regarding waiver of Fourth Amendment rights as a condition of probation or of sentence suspension. See generally Phillip E. Hassman, Annotation, Validity of Requirement That as Condition of Probation, Defendant Submit to Warrantless Searches, 79 A.L.R.3d 1083 (1977).

### A.

In Tamez v. State, 534 S.W.2d 686 (Tex. Ct. Crim. App. 1976), the Texas Court of Criminal Appeals struck down a probationary condition requiring the defendant to submit his person, residence or vehicle to search by any peace officer at

any time.  Acknowledging that probationary conditions may be upheld if reasonably related to rehabilitation of the accused or protection of the public, id. at 691, the Texas court invalidated the Fourth Amendment waiver because it found:  (1) the choice of accepting the condition or of going to prison rendered the defendant's decision coerced and involuntary; and (2) the waiver was too broad and did not serve the ends of probation.  Id. at 692.  Similarly other jurisdictions have struck down so-called "blanket" provisions because of their overbreadth.  See United States v. Consuelo-Gonzalez, 521 F.2d 259 (9th Cir. 1975) (en banc) (search provision too broad under federal statute); Grubbs v. State, 373 So.2d 905 (Fla. 1979) (probation condition imposed by trial judge allowing warrantless search at any time by law enforcement official too broad); Kirkpatrick v. State, 412 So.2d 903, 905 (Fla. Dist. Ct. App. 1982) (drug offender's probation search condition "improper and should be stricken"); State v. Fields, 686 P.2d 1379 (Haw. 1984) (probation condition permitting warrantless search for drugs at any time too broad absent reasonable suspicion).  Some courts have held that the waiver of Fourth Amendment rights in return for probation or parole is legally coercive, thereby negating voluntary consent.  See United States ex rel. Coleman v. Smith, 395 F.Supp. 1155, 1157 (W.D.N.Y. 1975); People v. Peterson, 233 N.W.2d 250, 255 (Mich. Ct. App. 1975).  But see People v. Richards, 256 N.W.2d 793, 795 (Mich. Ct. App. 1977).

Other jurisdictions have taken a different view.  In People v. Mason, 488 P.2d 630 (Cal. 1971), the California Supreme Court upheld a probation condition that required a narcotics offender to "'submit his person, place of residence, vehicle, to search and seizure at any time of the day or night, with or without a search warrant, whenever requested to do so by the Probation Officer or any law enforcement officer.'"  Id. at 631.  The California court ruled that this condition had been validly imposed, was "reasonably related to the probationer's prior criminal conduct[,] and [was] aimed at deterring or discovering subsequent criminal offenses."  Id. at 632.  Moreover, "when [a] defendant in order to obtain probation specifically agreed to permit at any time a warrantless search of his person, car and house, he voluntarily waived whatever claim of privacy he might otherwise have had."  Id. at 634.  See Owens v. Kelley, 681 F.2d 1362 (11th Cir. 1982) (upholding condition providing for warrantless searches by law enforcement or probation officers to extent conducted for probationary purposes); State v. Montgomery, 566 P.2d 1329 (Ariz. 1977) (upholding condition that a convicted burglar submit to warrantless searches at any time by law enforcement or probation officers); In re Marcellus L., 279 Cal. Rptr. 901 (Cal. Ct. App. 1991) (upholding warrantless search by police officer who lacked prior knowledge of probation search condition); State v. Josephson, 867 P.2d 993 (Idaho Ct. App.

1993) (holding that defendant voluntarily consented to search condition); Allen v. State, 369 S.E.2d 909 (Ga. 1988) (plea bargain agreement to waive Fourth Amendment protection valid); Himmage v. State, 496 P.2d 763 (Nev. 1972); State v. Perbix, 331 N.W.2d 14 (N.D. 1983).

Some jurisdictions that permit a condition of probation or parole to circumscribe a convicted criminal's Fourth Amendment protection from governmental intrusion have limited the scope of the warrantless search condition. Some courts have restricted who may authorize the search[1] and the grounds upon which warrantless searches may be made.[2] Some courts require a reasonable nexus between the warrantless search provision and the offense for which the offender was convicted.[3]

---

[1] See, e.g., Roman v. State, 570 P.2d 1235, 1242 n.20 (Alaska 1977) ("correctional authorities"); State v. Bollinger, 405 A.2d 432 (N.J. Super. Ct. Law Div. 1979) (probation officers); State v. Age, 590 P.2d 759, 763-64 (Or. Ct. App. 1979) (under direction and control of probation officer); State v. Cummings, 262 N.W.2d 56, 61 (S.D. 1978) (noting that search condition required prior consent from probation officer).

[2] See, e.g., Consuelo-Gonzalez, 521 F.2d at 266 (reasonable cause); Roman, 570 P.2d at 1241, 1243 (reasonable cause); State v. Burke, 766 P.2d 254, 256 (Mont. 1988) ("reasonable grounds"); Himmage, 496 P.2d at 764-65 (reasonable cause); State v. Velasquez, 672 P.2d 1254, 1260 (Utah 1983) ("reasonable grounds").

[3] See, e.g., United States v. Schoenrock, 868 F.2d 289 (8th Cir. 1989) (probation search condition of drug offender for alcohol and controlled substances); United States v. Sharp, 931 F.2d 1310 (8th Cir. 1991) (search condition of supervised release of drug offender for controlled substances and alcohol); Roman, 570 P.2d at 1242-43 (reasonably related to rehabilitation and crime for which offender was convicted); People v. Hellenthal, 465 N.W.2d 329, 330 (Mich. Ct. App. 1990) (reasonably tailored to rehabilitation); State v. Fetterhoff, 739 S.W.2d 573 (Mo. Ct.

In In re: Tyrell J., 876 P.2d 519 (Cal. 1994), a juvenile was searched by a police officer who was unaware that the juvenile had waived his Fourth Amendment rights as a condition of probation.  Despite the lack of probable cause, the California Supreme Court held that "a juvenile probationer subject to a valid search condition does not have a reasonable expectation of privacy over his person or property."  The court noted that:

> In this case, [the defendant] was subject to a valid search condition, directly imposed on him by the juvenile court in a prior matter.  We presume that he was aware of that limitation on his freedom, and that any police officer, probation officer, or school official could at any time stop him on the street, at school, or even enter his home, and ask that he submit to a warrantless search.  There is no indication the minor was led to believe that only police officers who were aware of the condition would validly execute it.  The minor certainly could not reasonably have believed [the police officer] would not search him, for he did not know whether [the officer] was aware of the search condition.  Thus, any expectation the minor may have had concerning the privacy of his bag of marijuana was manifestly unreasonable.

Id. at 529-30 (footnote omitted).

(..continued)
App. 1987) (requiring drunk driver to submit to blood alcohol test upon request of any law enforcement officer); State v. Morgan, 295 N.W.2d 285 (Neb. 1980) (requiring drug offender to submit to search at any time by any law enforcement officer, with or without cause, for controlled substances); State v. Bollinger, 405 A.2d 432 (N.J. Super. Ct. Law Div. 1979) (search of drug offender for controlled substances at a reasonable time and in a reasonable manner); State v. Age, 590 P.2d 759, 763-64 (Or. Ct. App. 1979) (probation condition must be reasonably related to offense for which convicted or needs of effective probation); State v. Moses, 618 A.2d 478, 484 (Vt. 1992) (condition must meet probation needs).

Anderson argues that the California cases are inapposite because they concern conditions of probation, whereas his waiver was a condition of a suspended sentence.  The law of Virginia distinguishes the suspension of a sentence from the imposition of probation.  See Grant v. Commonwealth, 223 Va. 680, 292 S.E.2d 348 (1982).  Code §§ 19.2-303, 19.2-304.  However, the conditions imposed in probation and those imposed in the suspension of sentences need not be analyzed in different contexts.  The common objective of such conditions is to protect society and to promote rehabilitation of the convict.  Both probation and the suspension of a sentence involve the trial court's discretionary, and conditional, release of a convict from the service of a sentence within the penal system.

In State v. Mitchell, 207 S.E.2d 263 (N.C. App. 1974), the Court of Appeals of North Carolina, approving a Fourth Amendment waiver as a condition of a suspended sentence, stated:

> Rights guaranteed by the Fourth Amendment may be waived, Zap v. United States, 328 U.S. 624 [] (1946), and the voluntary consent to warrantless search of one's premises will render competent evidence obtained by the search.  []  We see no sound reason why such waiver and consent may not effectively be given by agreeing thereto as one of the conditions of a suspended sentence.  This should especially be true, where, as here, such condition is clearly designed to facilitate the State's supervision of the probationer's rehabilitation.

Id. at 264-65 (citation omitted).[4]

_____
[4]Subsequently, the North Carolina legislature enacted a

-12-

III.  VALIDITY OF THE WAIVER

Our view of the Fourth Amendment and of applicable public policy leads us to conclude that Anderson's waiver was valid.  In

(..continued)
statute that "forbids requiring as a part of a probationary sentence the condition that a defendant consent to a warrantless search by anyone other than a probation officer."  State v. Moore, 247 S.E.2d 250, 251 (N.C. App. 1978).  See N.C. Gen. Stat. § 15A-1343(b1)(7).

reaching that conclusion, we have considered the contrary arguments invoked by other jurisdictions and argued by Anderson.

## A.   COERCIVENESS

Anderson argues that a waiver given under threat of criminal punishment results from coercion.  We find this argument unpersuasive.  The prospect of punishment confronted Anderson not for the purpose of inducing him to give the waiver, but rather as the consequence of the crime for which he was convicted.  Furthermore, the waiver was not imposed upon Anderson by the sentencing court.  It was an element of his voluntary plea agreement, and as such, was proposed by him to the sentencing court.  Anderson was a moving party.  He sought the imposition of the waiver.  To conclude that Anderson's decision to petition for a suspended sentence conditioned upon the search provision was coerced would necessarily invalidate all conditions of plea agreements.  See State v. Josephson, 867 P.2d 993, 996 (Idaho Ct. App. 1993); State v. Morgan, 295 N.W.2d 285, 288-89 (Neb. 1980). An offender's selection between two sanctions resulting from his own wrongdoing constitutes choice, not coercion.

## B.   OVERBREADTH

Anderson argues that the waiver was overbroad, both in scope and in duration.  We disagree.  The scope of the waiver was necessary to its effectiveness.  Its purpose was to ensure Anderson's good conduct.  His vulnerability to search was an inducement to his abstention from possession of contraband and

from illegal possession of weapons.

Most waivers are prospective. Usually, a waiver is given seconds or minutes prior to the authorized search. However, on occasion, a waiver may precede the search thereby authorized by hours or days. See Zap v. United States, 328 U.S. 624, 628 (1946) (upholding prospective contractual waiver permitting government inspection of business records). We perceive no conceptual objection to yet further prolongation of a waiver. In this case, Anderson, the moving party, set the duration of his waiver. We see no reason to repudiate in retrospect the agreement that he proposed and voluntarily undertook. See Mitchell, 207 S.E.2d at 264-65.

### C. REASONABLENESS

Upon a defendant's criminal conviction, a trial judge "may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the accused on probation under such conditions as the court shall determine . . . ." Code § 19.2-303. "The only limitation placed upon the discretion of the trial court in its determination of what conditions are to be imposed is that a condition be 'reasonable' . . . 'having due regard to the nature of the offense, the background of the offender and the surrounding circumstances.'" Nuckoles v. Commonwealth, 12 Va. App. 1083, 1086, 407 S.E.2d 355, 356 (1991) (quoting Loving v. Commonwealth, 206 Va. 924, 930, 147 S.E.2d 78, 83 (1966), rev'd on other grounds, 388 U.S. 1 (1967)).

The Fourth Amendment forbids unreasonable searches and seizures. Waiver is a long accepted circumstance that may render a search reasonable. Anderson had a history of illegal firearm and drug possession. The purpose of the waiver was to ensure that he would cease such unlawful conduct. That purpose sought to promote public order and safety, to effect Anderson's rehabilitation, and to justify sparing him punishment and permitting him to remain at liberty. We find all these objectives to be reasonable.

### D. PUBLIC POLICY

The public policy of the Commonwealth seeks to avoid the unnecessary imposition of punishment, to promote public order and safety, and to effect the rehabilitation of malefactors. See Singleton v. Commonwealth, 11 Va. App. 575, 578, 400 S.E.2d 205, 207 (1991); Deal v. Commonwealth, 15 Va. App. 157, 160, 421 S.E.2d 897, 899 (1992). The waiver proposed by Anderson and incorporated into his January, 1995 sentence served those purposes.

### IV. THE NATURE OF THE WAIVER

Anderson argues that at his sentencing in January, 1995, he did not waive his Fourth Amendment rights, but simply agreed to give such a waiver in the future should a search of his person, place of residence or property be sought. He argues that the language in his sentencing order "[t]hat the defendant shall waive his Fourth Amendment right" denotes a requirement of future

–16–

action on his part, rather than a recital of a present waiver. This is not the interpretation that the trial court adopted, and we think it unreasonable and unlikely that the parties intended such a meaning at the January, 1995 sentencing. We construe the words "shall waive" to state an imperative, not to refer to a future act. The construction adopted by the trial court is supported by the record of the January, 1995 sentencing proceedings.

Anderson argues that because he did not, in January, 1995, give an ongoing waiver, but rather merely agreed to give a future waiver, his refusal to submit to a search on June 21, 1995, could amount to no more than a violation of the conditions of his suspended sentence, and could not validate an otherwise unreasonable warrantless search of his person. Because of the view that we take of the nature of the waiver, we reject this argument.

## V. POLICE OFFICERS' KNOWLEDGE

Finally, Anderson contends that the police officers' lack of knowledge of his waiver prevents the officers' reliance upon the waiver to justify an otherwise unconstitutional search. This argument misses the point. The conduct of the officers is not at issue.[5] Absent a legitimate expectation of privacy, there can be

_____

[5]In addition, the record does not reveal any harassing or intimidating conduct by the officers. See United States v. Consuelo-Gonzalez, 521 F.2d 259, 265 (9th Cir. 1975) (en banc). To the contrary, the officers came upon three "very loud" individuals alighting from a van, and investigated the situation.

no violation of the Fourth Amendment.

In determining whether a criminal defendant enjoys a reasonable expectation of privacy in the object to be searched, we consider whether he has exhibited an expectation of privacy in the object and whether that expectation is one that "society is prepared to recognize as reasonable." Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). See Wells v. Commonwealth, 6 Va. App. 541, 549, 371 S.E.2d 19, 23 (1988). Admittedly, Anderson exhibited a subjective expectation of privacy over the controlled substances and the handgun in his backpack. However, he had divested himself of the right to such an expectation when he knowingly and voluntarily waived his Fourth Amendment right to be free from unreasonable searches and seizures. Because Anderson was subject to a valid search condition, he could claim no legitimate expectation of privacy.

The judgment of the trial court is affirmed.

Affirmed.

Coleman, J., concurring in part, and dissenting in part.


I concur and join in Part IV of the majority opinion rejecting the defendant's claim that, under the terms of the plea agreement, he did not grant a present waiver but "simply agreed to give such a waiver in the future." As to the validity of that waiver provision as construed by the majority, I find it unnecessary to address that question because, in my view, the scope of the defendant's waiver in this case was limited to allowing police officers, including the defendant's probation officer, to conduct reasonable searches without obtaining a warrant to search the defendant's person, residence, vehicle, and other places where he might have a protected privacy interest in order to supervise his probation. The search undertaken in this case was clearly unrelated to the supervision of defendant's probation, as evidenced by the fact that the officer was unaware of the defendant's status and the waiver he had executed.

The purpose of the waiver of the reasonableness requirement was to enable law enforcement officers or those persons supervising the defendant's probation to search him or his protected areas of privacy in order to assure compliance with the terms and conditions of his probation, which required that he not use or possess drugs and that he not violate the law. The waiver did not constitute, in my opinion, a carte blanche forfeiture by the defendant of his Fourth Amendment rights so as to legitimize every search of his person or possessions. Thus, I would hold

that the police officers' warrantless search of the defendant conducted without probable cause or without his consent and without knowledge of or pursuant to the waiver provision was unreasonable and violated the defendant's protection of the Fourth Amendment. Accordingly, the cocaine, marijuana, and firearm were illegally seized and should have been suppressed based upon the exclusionary rule set down in Mapp v. Ohio, 367 U.S. 643 (1961).[6]

The majority, relying upon the California case of In re: Tyrell J., 876 P.2d 519 (Cal. 1994), and the North Carolina case of State v. Mitchell, 207 S.E.2d 263 (N.C. App. 1974), the latter having been overruled by statute, necessarily holds that the officers' otherwise illegal search of the defendant was reasonable because, in the waiver, the defendant had forfeited his reasonable expectation of privacy, regardless of whether the officer knew of or was conducting the search pursuant to the defendant's waiver. I disagree with that interpretation of the waiver and disagree with the majority's assertion that "[t]he conduct of the officers is not at issue." In order for police officers to lawfully seize and search a suspect without a warrant, the officers must have either probable cause to arrest,

---

[6]My view of the case would not necessarily preclude the illegally seized evidence from being used to revoke the defendant's probation or suspended sentences even if the search was not conducted for the purpose of supervising the defendant's probation. See Anderson v. Commonwealth, 251 Va. 437, 470 S.E.2d 862 (1996); Johnson v. Commonwealth, 21 Va. App. 172, 462 S.E.2d 907 (1995).

consent, or be acting in reliance upon or pursuant to a valid waiver. The officers possessed none of these prerequisites.

The majority's holding, which is based upon the waiver, would validate every otherwise illegal search or seizure of the defendant, presumably in any jurisdiction, even though no probable cause existed to suspect the accused of criminal activity, except, perhaps, where the officers use excessive force. The defendant's waiver in this case was not, in my opinion, that broad or far-reaching. The purpose of the waiver was to allow law enforcement officers, including the defendant's probation officer, who knew of the defendant's probationary status, to be able to monitor the defendant's conduct and behavior by searching him, his home, his vehicle, or personal belongings without notice and without probable cause. The defendant did not forfeit "whatever claim of privacy he otherwise might have," as the majority holds.[7] A waiver for the limited purpose we have here is, in my judgment, a legitimate and effective enforcement tool, similar to the requirement that probationers submit to urine screens, which enable the authorities to assure that a probationer or convict with a suspended sentence is adhering to the conditions of probation or suspension. The defendant's waiver was not, in my opinion, a forfeiture of all Fourth Amendment protections. As with consent,

_____

[7]As previously noted, because of the manner in which I construe the waiver, I do not reach the question of the constitutionality of a waiver of _all_ Fourth Amendment rights.

unless officers conduct a search within the scope of the consent or waiver, a warrantless search without probable cause is unreasonable.  Accordingly, because the trial court erred in not suppressing the evidence, I respectfully dissent.